UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YECHIEL BROMBERG,

          Plaintiff,

vs.

AVNET, INC.,

          Defendant.

Civil Action No.

**COMPLAINT**

Plaintiff Yechiel Bromberg ("Plaintiff"), by his undersigned attorneys, alleges the following based upon personal knowledge as to his own acts and information and belief as to all other matters, based upon the investigation conducted by and through his attorneys:

**NATURE OF THE ACTION**

1. Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101, lists information required to be in a proxy statement pursuant to 15 U.S.C. § 78n(a), and requires that "[i]f action is to be taken with respect to any [compensation] plan pursuant to which cash or noncash compensation may be paid or distributed" certain information must be furnished to shareholders.

2. Defendant Avnet, Inc. ("Avnet" or the "Company") furnished shareholders with a definitive proxy statement issued through the Securities and Exchange Commission's ("SEC") Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") on Schedule 14(a) on October 4, 2018 (the "Solicitation") for the annual meeting of AVNET shareholders scheduled for November 16, 2018 (including any adjournments or postponements thereof, the "Annual Meeting"), which Solicitation included four voting proposals that required shareholder action to

approve.[1] Of those four voting proposals, the third voting proposal ("Proposal 3") seeks shareholder action, by way of a vote, to amend and restate the Avnet Employee Stock Purchase Plan to authorize an additional 500,000 shares under the Plan (the "ESPP" or the "Plan").

3. As described below, Proposal 3 does not comply with the SEC's disclosure requirements for proxy statements, codified at Item 10(a)(1) of 17 C.F.R. § 240.14a-101.

4. Because of Defendant's non-compliance with 17 C.F.R. § 240.14a-101, Plaintiff, a shareholder of Avnet whose vote is solicited, brings this stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78n(a), and the rules and regulations of the SEC, to enjoin a shareholders vote on Proposal 3 in the Solicitation until a compliant disclosure is made and Avnet's shareholders can make an informed vote on Proposal 3.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

6. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

7. Venue is proper in this District because, as allowed under Section 27(a) of the Exchange Act, this District is where the violation at issue in this case occurred because numerous

---

[1] The Solicitation states that "[o]n or about October 4, 2018, the Company mailed to its shareholders a Notice of Internet Availability of Proxy Materials containing instructions on how to access the Company's proxy materials, including the 2018 Proxy Statement and the 2018 Annual Report, and how to vote through the Internet, by mail or in person. On or about October 4, 2018, certain shareholders, in accordance with their prior requests, were sent e-mail notifications of how to access the proxy materials and to vote or have been mailed paper copies of the Company's proxy materials and a proxy card or voting form."

Solicitations, including Plaintiff's, were or will be mailed to Avnet shareholders residing in this District.

## PARTIES

8. Plaintiff, an Avnet shareholder as of the close of business on September 18, 2018 (the "Record Date"), is entitled to notice of, and to participate in and vote at, the Annual Meeting.

9. Avnet is a corporation organized under the laws of New York that maintains a presence at 2211 South 47th Street, Phoenix, Arizona 85034. Avnet is a distributor of electronic components and embedded solutions. Avnet's stock is trades on the Nasdaq under the symbol "AVT". According to the Solicitation, "[t]he aggregate number of shares of Common Stock outstanding (net of treasury shares) at September 18, 2018, was 114,084,560, comprising all of the Company's capital stock outstanding as of that date."

## Wrongful Acts and Omissions

10. Proposal 3 requests that Avnet's shareholders approve an amendment and restatement of the ESPP to, among other things, increase the number of shares authorized for issuance under the ESPP. The Solicitation states:

> The shareholders initially approved the ESPP at the Company's 1995 Annual Meeting. An aggregate of 500,000 shares of Common Stock were originally authorized for issuance under the ESPP. As the result of a stock split in September 2000 and additional increases approved by shareholders, a total of 4,500,000 shares have been authorized for issuance. As of August 31, 2018, approximately 86,062 shares continue to be reserved for sale under the ESPP.
>
> Under the current proposal, the Board is requesting shareholder approval, as required by Section 423 of the Internal Revenue Code of 1986, as amended ("Section 423"), for an increase of 500,000 shares authorized for issuance under the Plan. Other revisions reflect the transition from the New York Stock Exchange to The

Nasdaq Global Select Market and to reflect best practices. There are no revisions proposed on plan design or administration.

*  *  *

*Summary of the Plan*

The purpose of the ESPP is to advance the interests of the Company and its shareholders by providing employees of the Company and its certain designated subsidiaries with an opportunity to acquire an ownership interest in the Company through the purchase of shares of its Common Stock on favorable terms through payroll deductions. Common Stock sold under the ESPP may be authorized but unissued shares of Common Stock, shares held in treasury or shares of Common Stock purchased by the Company.

The ESPP allows eligible employees to purchase shares of the Company's Common Stock at a discount. In general, any employee of the Company and certain of its subsidiaries is eligible to participate in the ESPP after three months of continuous employment on the basis of at least 20 hours per week.

To participate in the ESPP, an eligible employee must enroll and specify an amount to be contributed to the ESPP each pay period through payroll deductions. After the last business day of each month, each enrolled employee automatically purchases a whole number of shares of Common Stock determined by dividing the employee's accumulated payroll deductions by the "offer price" for the month (subject to certain limits described below). Pursuant to the ESPP, the offer price per share for each month is 95% of the closing price of a share of Common Stock on the last business day of the month.

The ESPP imposes the following limits on the amount of payroll deductions and the number of shares that an eligible employee may purchase under the ESPP:

- The maximum number of shares that may be purchased in any month is 500 shares.

- An eligible employee's cumulative payroll deductions for a calendar year may not exceed $23,750 per calendar year.

- In any calendar year, the shares purchased by an eligible employee may not have a fair market value of more than $25,000. For purposes of this

> limitation, the fair market value of each share purchased is equal to the fair market value of the share on the first day of the month for which it is purchased.
>
> - An individual will not be eligible to participate in an offering if the individual would own shares of Common Stock and/or hold outstanding options to purchase shares of the Company's Common Stock equal to 5% or more of the total combined voting power or value of all classes of shares of the Company.
>
> The ESPP is administered by a committee appointed by the Board of Directors. The committee has the authority to interpret all provisions of the ESPP.
>
> The committee may at any time amend the ESPP to the extent it deems necessary or appropriate in light of, and consistent with, Section 423. However, any amendment that either changes the composition, functions or duties of the committee or modifies the terms and conditions pursuant to which options are granted under the ESPP must be approved by the Board of Directors.
>
> The Board may amend any and all such provisions of the ESPP. Shareholder approval is required for any amendment to the extent (and only to the extent) required by Rule 16b-3under [sic] the Exchange Act or by Section 423.
>
> The Board may terminate the ESPP at any time, except that the Board may not modify, cancel or amend any purchase right granted before such termination unless the affected participant consents in writing.

11. Proposal 3 does not provide the legally required information because it does not provide sufficient information for Avnet stockholders to understand how many participants are eligible to participate in the Plan, and thus it does not comply with Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101, which requires:

> *Item 10. Compensation Plans.* If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> **(a)** *Plans subject to security holder action.*

5

> **(1)** Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

12. Instead of providing the "approximate number of persons in each such class, and … the basis of such participation," Proposal 3 only tells stockholders the following about who will be eligible to participate in the ESPP:

> The ESPP allows eligible employees to purchase shares of the Company's Common Stock at a discount. In general, any employee of the Company and certain of its subsidiaries is eligible to participate in the ESPP after three months of continuous employment on the basis of at least 20 hours per week.[2]

13. The Solicitation omits the approximate number of persons, by class, who qualify as eligible participants under the Plan.

14. The Solicitation states that, with respect to the "CEO Pay Ratio" that Avnet "utilized the entire global population of 15,212 eligible employees on April 1, 2018" with certain exceptions, and that "the total number of US and non-US employees used in the final analysis was 3,676 and 10,778, respectively." However, the undefined term "eligible employee" for the CEO Pay Ratio does not appear to be synonymous with the definition of "Eligible Employee as defined by the ESPP[.]" To comply with Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-

---

[2] Page 42 of the Solicitation similarly states:

> *Employee Stock Purchase Plan (ESPP).* The Company maintains the ESPP, which is a tax-qualified plan available to all employees of the Company and certain of its subsidiaries who have been employed for at least three continuous months on the basis of at least 20 hours per week. The ESPP provides an opportunity to acquire an ownership interest in the Company through the purchase of the Company's Common Stock at a 5% discount through payroll deductions. Please see "Proposal 3 — Summary of the Plan" for more information on the ESPP.

101, Avent must disclose the approximate number of Eligible Employees, as defined by the ESPP, and must disclose the most current number reasonably possible.

15. In addition to the fact that the data disclosed in the CEO Pay Ratio disclosure will be over seven and a half months old as of the Annual Meeting, the CEO Pay Ratio disclosure does not disclose how many of such persons "have been employed for at least three continuous months on the basis of at least 20 hours per week" by the Company or one of its Designated Subsidiaries; which subsidiaries are "Designated Subsidiaries" for participation in the ESPP, and/or their approximate number of Eligible Employees.

16. As a result of the above defects, the Solicitation does not inform shareholders of how many participants may be awarded the 500,000 shares that Avnet's stockholders are being asked to approve for distribution through the ESPP. Thus, the Company must disclose to its shareholders, before they vote, the approximate number of persons who will be eligible to participate in the ESPP.

17. This contravention of the SEC rules renders the Solicitation unlawful under § 14(a) of the Exchange Act.

18. The preceding paragraphs state a direct claim for relief against Avnet under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

19. As a result of these actions, Plaintiff will be injured, and he has no adequate remedy at law. He will suffer irreparable harm if no action is taken to ameliorate this harm because, in addition to being forced to vote without this required information, the Plan allows for the issuance of 500,000 million shares, worth approximately $ 20.5 million, under the ESPP to an unknown number of persons who qualify as eligible.

20. Until Avnet makes appropriate disclosures, it is necessary for the Court to take action to enjoin the vote beforehand to prevent shares from being distributed to participants based on an uninformed vote that lacks proper and informed shareholder approval because unwinding awards following the Annual Meeting would be impracticable.

21. To ameliorate injury, the Court should grant injunctive relief and stay the shareholder vote unless the Company issues a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1), and which is timely furnished to shareholders.

22. Avnet should be enjoined from presenting Proposal 3 for a stockholder vote at the Annual Meeting or certifying or otherwise accepting any vote cast in connection with Proposal 3 unless the appropriate amendments are timely made.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against Avnet, as follows:

(A) A preliminary and permanent injunction, enjoining Avnet from:

i. presenting Proposal 3 for a shareholder vote at the Annual Meeting unless a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1) is timely furnished to shareholders;

ii. certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Avnet stockholder in connection with Proposal 3 in the Solicitation unless a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1) is timely furnished to shareholders;

(B) A preliminary and permanent injunction requiring Avnet to furnish a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1);

(C) A preliminary and permanent injunction enjoining Avnet from otherwise proceeding at its Annual Meeting at the set time or at any other time, in a manner inconsistent with Item 10(a)(1);

(D) Awarding Plaintiff reasonable attorney's fees and expenses incurred in bringing this action and in creating a benefit for all of Avnet's shareholders to the extent that a common benefit is conferred, and;

(E) Granting such other and further relief as this Court may deem just and proper.

Dated: October 15, 2018    STULL, STULL & BRODY

    /s/ *Michael J. Klein*
Aaron L. Brody
Michael J. Klein
6 East 45th Street
New York, NY 10017
Phone: (212) 687-7230
Fax: (212) 490-2022
abrody@ssbny.com
mklein@ssbny.com

*Attorneys for Plaintiff*